743 S.E.2d 88

CHARLESTON COUNTY ASSESSOR, Appellant,

v.

LMP PROPERTIES, INC., Respondent.

Appellate Case No. 2011–203547.

No. 5086.

Court of Appeals of South Carolina.

Heard Nov. 1, 2012.
Decided Feb. 27, 2013.

County Attorney Joseph Dawson, III, Deputy County Attorney Bernard E. Ferrara, Jr., Assistant County Attorney Austin A. Bruner, and Assistant County Attorney Bradley A. Mitchell, all of North Charleston, for Appellant.

Stanley C. Rodgers, of Charleston, for Respondent.

WILLIAMS, J.

The Charleston County Assessor (Assessor) appeals the administrative law court's (ALC) order valuing a piece of property containing one hundred twenty-one individual units and owned by LMP Properties, Inc. (LMP) at $8,565,000. The Assessor argues the ALC erred in determining the units' highest and best use on the valuation date of December 31, 2003, the operative date for the last countywide reassessment in Charleston County, instead of December 31, 2007, for the tax year 2008. We reverse and remand.

## FACTS

The subject property, named The Legends, is located in Mount Pleasant and consists of thirteen two-story buildings. LMP's predecessor in title to the property is Keystone Legends I, L.P. ("Keystone"). Keystone mortgaged the property in 1999 for $15,891,900 to build the complex, which was originally composed of two hundred apartment units. In April 2006, LMP purchased The Legends for $5.00 and assumed the mortgage. Just prior to conveying the property to LMP, Keystone legally converted the units to condominiums by establishing a horizontal property regime pursuant to section 27–31–10 *et seq.* of the South Carolina Code (2007 & Supp. 2012). At the time of the hearing before the ALC, LMP had sold fifty-eight of the two hundred units and placed twenty-one units aside for further marketing and sale. The remaining one hundred twenty-one units, which are the subject of this appeal, have continued to be owned and leased to third parties by LMP although they are titled as condominiums.

Following the title conversion of the apartments into condominiums, the Assessor changed its records to reflect the property as two hundred separate units and assigned each unit a separate tax identification number. The Assessor also reviewed the units' valuation for ad valorem taxation purposes,

and, by assessing each unit individually as a condominium, determined that the fair market value of the units for the tax year 2008 was $16,454,000. LMP disagreed with the Assessor's valuation and submitted a timely request for review to the Assessor. The Assessor declined to alter its original valuation, and LMP sought review of the valuation with the Charleston County Board of Assessment Appeals (Board). Following a hearing on November 4, 2009, the Board set a value of $10,090,500 for the tax year 2008.

The Assessor filed a request for a contested case hearing with the ALC, seeking review of the Board's decision, and the ALC held a hearing on the matter on August 24, 2010. At the hearing, the parties agreed that the date for valuing the properties was December 31, 2003, because 2004 was the year of the countywide reassessment. However, the parties disagreed as to when the highest and best use of the units was to be determined for purposes of valuing the property. The Assessor argued that the highest and best use of the units was to be determined as of December 31, 2007. Accordingly, the Assessor contended the highest and best use of the units was as condominiums because the units were titled as condominiums on December 31, 2007. In contrast, LMP countered that the proper date for determining the highest and best use was December 31, 2003. Based on this date, LMP contended that the highest and best use of the units was as apartments because the mortgage on the property in 2003 required that the units be used as apartments. Specifically, the loan used to finance the construction of the units was procured from the United States Department of Housing and Urban Development and prohibited 1) the prepayment of the indebtedness until March 1, 2006, and 2) the use of the units for any other purpose other than that intended at the time the mortgage was executed. In the alternative, LMP argued that the units should be valued as apartments because 1) due to the decline in the economy, apartments were the highest and best use of the property in 2007 and 2) pursuant to the supreme court's holding in *Lindsey v. South Carolina Tax Commission,* 302 S.C. 504, 397 S.E.2d 95 (1990), the units should be valued based on their use, as apartments, rather than how they are titled, as condominiums.

In its order, the ALC agreed with LMP and found that section 12–43–215 of the South Carolina Code (Supp.2012)

required that the highest and best use of the units be determined on the valuation date, which the parties agreed was December 31, 2003. Specifically, the ALC found that because "the assessment process is so intertwined with the valuation process ... the legislative intent is clear [and t]he property's fair market value must be based on the property's highest and best use on the valuation date...." Accordingly, the ALC found that the highest and best use of the units was as apartments because the mortgage on the units in 2003 prohibited them from being used as condominiums. In making this determination, the ALC relied upon the methodology endorsed by the Appraisal Institute, which provides that a property's highest and best use must be "physically possible, legally permissible, financially feasible, and maximally profitable...."[1] Because the ALC agreed with LMP's argument that the highest and best use of the units should be determined as of December 31, 2003, the ALC declined to address LMP's remaining arguments. Based on its valuation of the units as apartments, the ALC adopted the valuation of the Assessor's witness Gary James, who valued the property at $8,565,000. This appeal followed.

## STANDARD OF REVIEW

■ "Tax appeals to the ALC are subject to the Administrative Procedures Act (APA)." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 73, 716 S.E.2d 877, 880 (2011). "Accordingly, we review the decision of the ALC for errors of law." *Id.* at 74, 716 S.E.2d at 881. "Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below." *Id.*

## LAW/ANALYSIS

### I. Highest and Best Use

■ The Assessor argues that the ALC erred in determining the highest and best use of the units as of December 31, 2003, the date of valuation used for the last countywide reassessment in 2004. We agree.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." *Sloan v. Hardee*,

---

1. The parties do not appeal the ALC's reliance on this method of determining the highest and best use of the units.

371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id.* In interpreting a statute, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id.* at 499, 640 S.E.2d at 459. Further, "the statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper Cnty.,* 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006). Accordingly, we "read the statute as a whole" and "should not concentrate on isolated phrases within the statute." *CFRE, LLC,* 395 S.C. at 74, 716 S.E.2d at 881.

▮ Section 12–37–930 of the South Carolina Code (Supp. 2012) provides that

> [a]ll property must be for taxation at its true value in money which in all cases is the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing, are not acting under compulsion, and are reasonably well informed of the uses and purposes for which it is adapted and for which it is capable of being used.

"Fair market value is the measure of value for taxation purposes under this statute." *Lindsey v. S.C. Tax Comm'n,* 302 S.C. 504, 507, 397 S.E.2d 95, 97 (1990).

▮ Ordinarily, "[t]he pertinent date to determine the value of property for a given tax year is December 31st of the preceding year." *Lindsey v. S.C. Tax Comm'n,* 302 S.C. 274, 275 n. 1, 395 S.E.2d 184, 185 n. 1 (1990); *see also* S.C.Code Ann. § 12–37–900 (Supp.2012). However, section 12–43–215, which the parties and the ALC agreed controls in the instant case,[2] provides as follows:

> When owner-occupied residential property assessed pursuant to Section 12–43–220(c) is valued for purposes of ad

---

2. Because section 12–43–215 applies to "owner-occupied residential property" and the units at issue in the instant case are not owner-occupied, we question whether it applies in the instant case; nevertheless, because no party appealed the ALC's ruling that section 12–43–215 applies, this ruling is the law of the case. *See Carolina Chloride, Inc. v.*

valorem taxation, the value of the land must be determined on the basis that its highest and best use is for residential purposes. When a property owner or an agent for a property owner appeals the value of a property assessment, the assessor shall consider the appeal and make any adjustments, if warranted, *based on the market values of real property as they existed in the year that the equalization and reassessment program was conducted and on which the assessment is based.* (emphasis added).

The parties and the ALC agreed that in order to calculate the property's fair market value, the property's highest and best use must first be determined, but disagree as to the date on which the highest and best use must be determined. LMP contends that section 12–43–215 requires that the highest and best use be determined as of December 31, 2003, the date used for the last countywide reassessment program in Charleston County. However, we agree with the Assessor that the appropriate date for determining the units' highest and best use is December 31, 2007.

Section 12–43–215 states merely that any adjustments to a property's value must be "based on the market values of real property as they existed in the year that the equalization and reassessment program was conducted. . . ." The statute is silent on the date to be used for determining the highest and best use of the property. Accordingly, it cannot be read to mandate a diversion from the general rule that the use of the property is to be determined as of December 31st of the preceding year. Such a finding would result in potentially unreasonable and illogical valuations in instances when the use of a property changes, potentially dramatically, from the time of the last countywide reassessment. Further, we find that the purpose of the statute, which provides some stabilization to the property taxes owed on a piece of property, is less viable in circumstances in which the property owner intentionally and willingly changes the use of a property. Therefore, we reverse the ALC's order to the extent it determined the highest and best use of the units based on a date of December 31, 2003.

---

*Richland Cnty.,* 394 S.C. 154, 172, 714 S.E.2d 869, 878 (2011) (noting "an unchallenged ruling, right or wrong, becomes the law of the case").

## II. *Lindsey* Case

The Assessor also argues that because LMP failed to appeal the ALC's ruling that *Lindsey v. South Carolina Tax Commission*, 302 S.C. 504, 397 S.E.2d 95 (1990), does not apply to the facts of the instant case, that ruling is the law of the case. This argument is without merit.

First, the ALC did not rule that the holding in *Lindsey* does not apply to the facts of this case, but rather declined to address the issue because it agreed with LMP's argument that the highest and best use was to be determined as of December 31, 2003, and was, therefore, as apartments. Accordingly, the law of the case doctrine does not apply because there was no ruling on the issue of whether *Lindsey* applied for LMP to appeal. *See Carolina Chloride, Inc.*, 394 S.C. at 172, 714 S.E.2d at 878 (noting "an unchallenged ruling, right or wrong, becomes the law of the case"). Therefore, this argument is both factually and legally without merit.

## CONCLUSION

Based on the foregoing, we reverse the ALC's order to the extent it determined the highest and best use of the units based on a date of December 31, 2003, and we remand so that the ALC may address the parties' remaining arguments regarding valuation of the units.

Accordingly, the ALC's order is

**REVERSED AND REMANDED.**

FEW, C.J., concurs in a separate opinion.

PIEPER, J., dissents in a separate opinion.

FEW, C.J., concurring.

I agree with Judge Williams that December 31, 2007, is the correct date for determining the highest and best use of the property. I disagree, however, that we must consider section 12–43–215 of the South Carolina Code (Supp.2012) under the law of the case doctrine. *See* note 2, *supra*. The ALC's reliance on the section is part of its analysis; it is not the court's ruling. The law of the case doctrine applies to unappealed "rulings." *Carolina Chloride, Inc., supra; Charleston Lumber Co., Inc. v. Miller Hous. Corp.*, 338 S.C. 171, 175, 525

S.E.2d 869, 871 (2000) ("unappealed ruling is law of the case" (citing *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997))). The ALC's ruling is that the proper date is December 31, 2003. The assessor appealed that ruling.

The parties appear to agree with the ALC that section 12–43–215 applies. However, the plain language of the section restricts its application to "owner-occupied residential property." Because the units whose values are in dispute here are not owner-occupied, the section does not apply. The fact that all parties and even the lower court mistakenly believe a statute applies does not require this court to interpret the statute when we find it to be inapplicable. The law of the case doctrine does not preclude this court from disagreeing with the basis of the lower court's analysis even when that basis is not challenged on appeal.

PIEPER, J., dissenting.

I respectfully dissent and would affirm the ALC's determination that the property's fair market value must be based on the property's highest and best use on the valuation date, which is December 31, 2003.

Initially, the parties agreed to apply section 12–43–215 of the South Carolina Code (Supp.2012). Additionally, neither party appealed the ALC's application of section 12–43–215. Therefore, the ALC's application of section 12–43–215, while incorrect, is the law of the case because South Carolina does not utilize a plain error rule of appellate procedure. *See Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) ("South Carolina appellate courts do not recognize the 'plain error rule,' under which a court in certain circumstances is allowed to consider and rectify an error not raised below by the party."); *Atl. Coast Builders & Contractors, LLC v. Lewis,* 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) ("[A]n unappealed ruling, right or wrong, is the law of the case.").

Construing the statute in favor of the taxpayer, I would find a plain reading of section 12–43–215 provides that December 31, 2003, is the correct date to determine the highest and best use of the property. *See Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue,* 399 S.C. 313, 321, 731 S.E.2d 869, 873 (2012) (holding an ambiguity in a tax statute must be construed in the

taxpayer's favor); *S.C. Nat'l Bank v. S.C. Tax Comm'n,* 297 S.C. 279, 281, 376 S.E.2d 512, 513 (1989) ("In the enforcement of tax statutes, the taxpayer should receive the benefit in cases of doubt."). According to section 12–43–215, the highest and best use of the property determines the value of the land and the market value of the land is to be determined by the last countywide reassessment year. *See* S.C.Code Ann. § 12–43–215 (Supp.2012) ("When owner-occupied residential property assessed pursuant to Section 12–43–220(c) is valued for purposes of ad valorem taxation, the *value of the land must be determined on the basis that its highest and best use* is for residential purposes. When a property owner or an agent for a property owner appeals the value of a property assessment, the assessor shall consider the appeal and make any adjustments, if warranted, based on the *market values of real property as they existed in the year that the equalization and reassessment program was conducted* and on which the assessment is based." (emphases added)). Because the highest and best use determines the value of the property, and the last countywide reassessment was in 2004, the proper date to utilize in determining the property's highest and best use pursuant to the statute is December 31, 2003. For the foregoing reasons, I would affirm the order of the ALC.